# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **FIRST COMMUNITY BANK, N.A.,** | |
| Plaintiff, | Case No. 1:10CV00008 |
| v. | **OPINION AND ORDER** |
| **TORNOW & KANGUR, L.L.P.,** | By: James P. Jones |
| | Chief United States District Judge |
| Defendant. | |

*J. Peter Richardson, Richardson & Davis, PLLC, Bluefield, West Virginia, for Plaintiff; Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

The defendant law firm in this civil case involving a dispute with a bank over Internet banking desires the court to dismiss, stay, or transfer the case to a federal court in North Carolina, where the defendant law firm has its office. For the reasons set forth in this opinion, the defendant's requests will be denied.

This case began in the Circuit Court of Tazewell County, Virginia, where the plaintiff, First Community Bank, N.A. (the "Bank") originally filed this declaratory judgment action on January 8, 2010, against the defendant, the law firm of Tornow & Kangur, L.L.P. ("Tornow"). Tazewell County is located in this judicial district. Tornow's office is located in Winston-Salem, North Carolina, and the Bank is headquartered in Tazewell County, Virginia. Tornow removed the case to this court

on February 18, 2010, pursuant to 28 U.S.C.A. §§ 1331, 1332, 1441, and 1446 (West 2006).

The case stems from a dispute over a series of unauthorized wire transfers from Tornow's trust account at the Bank. The unauthorized transfers, totaling over $500,000, occurred between December 22 and 24, 2009. Because of a computer virus in Tornow's computer system, an unknown perpetrator was able to remotely access Tornow's account and transfer money to overseas accounts in Russia and Ukraine. Although some of the money was recovered, over $400,000 remains missing. After the parties met to discuss what had happened, the Bank filed the present case asking the court to determine, in essence, if it has any legal obligation to reimburse Tornow for the lost funds.

Tornow, in turn, filed an action on February 17, 2010, in Superior Court in North Carolina, demanding reimbursement under federal law governing wire transfers ("Regulation J"), Virginia state contract law, and North Carolina state tort law.[1] On April 21, 2010, the Bank removed that case to the United States District Court for the

---

[1] The Bank has moved to dismiss all the state law claims in the North Carolina action, contending that they are preempted by Regulation J. *See* Def.'s Mot. Dismiss Failure to State Claim 1, *Tornow & Kangur, L.L.P. v. First Cmty. Bank, N.A.*, No. 1:10-CV-222 (M.D.N.C. Mar. 19, 2010). The Bank also contends the North Carolina state law claims are improper because breach of contract actions do not ordinarily give rise to tort claims. *Id.*

Middle District of North Carolina, claiming both federal question and diversity jurisdiction. Tornow has not challenged that removal.

In the instant motions, Tornow concedes that this court has personal jurisdiction and is a proper venue,[2] but argues that this case should be dismissed or stayed pursuant to the court's discretionary authority to decline to hear declaratory judgment actions. Alternatively, Tornow requests this court transfer this case to the Middle District of North Carolina for the convenience of the parties and in the interests of justice, pursuant to 28 U.S.C.A. § 1404(a) (West 2006), or stay this case until the completion of the North Carolina action. I will deny both requests.

In regard to the motion to dismiss, I find no reason to decline to exercise this court's jurisdiction over this declaratory judgment action. Although "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions," *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998), a court must only decline jurisdiction "for good reason," *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks and

---

[2] In the contract Tornow signed in order to receive wire transfer services from the Bank, the parties agreed that "[a]ny suit or proceeding arising out of or relating to this agreement may be commenced in a federal court in the Western District of Virginia, or in the Circuit Court for Tazewell County, Virginia; and each party irrevocably submits to the jurisdiction and venue of such courts." (Exhibit A of Tornow Aff., Ex. B–Resource FCB Online Wire Transfer Agreement 5.)

citation omitted). "[A] district court should normally entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas.*, 139 F.3d at 422 (internal quotation marks and citation omitted).

At the center of the controversy in this case is whether the Bank had commercially reasonable security measures in place to protect against unauthorized wire transfers. In adjudicating whether the Bank somehow violated its legal obligations to Tornow by allowing the December 2009 wire transfers to go through, this declaratory action will serve the added "useful purpose" of determining whether the Bank's security measures are commercially reasonable, affording the Bank relief from the uncertainty of whether it has adequate safeguards. Thus, this case meets the minimum requirements of a declaratory action, but that does not end the inquiry.

I must also consider the concerns of federalism, efficiency, comity, and procedural fencing, such as forum shopping. *See id.* These considerations are guided by several factors, including (1) the strength of a state's interest in having the issues raised in the federal action decided in state court, (2) whether the issues raised can more efficiently be resolved in a pending state action, and (3) whether permitting the

federal action to go forward would result in unnecessary entanglement between the federal and state court systems. *See id.*

None of these factors counsel me to decline jurisdiction here. The North Carolina claims are currently being challenged by a motion to dismiss, and the remaining claims largely turn on federal and Virginia law. Thus, North Carolina's interest in hearing the case is minor to begin with. However, because the North Carolina action was removed to federal court on the basis of diversity jurisdiction, none of the claims are going to be heard in North Carolina state court, regardless of whether this declaratory action goes forward. Therefore, federalism concerns are simply not a factor in this case.

Although Tornow contends that the Bank used this declaratory judgment as a form of procedural fencing, I disagree. According to Tornow, the Bank rushed to state court in Virginia, not in a good faith effort to resolve the dispute, but in order to force Tornow to adjudicate the case in Virginia. I find, however, that the Bank had a legitimate interest in seeking a speedy resolution to this dispute. Not only does the Bank need to determine its liability for the illegal transfers of money from Tornow's account, but it also needs to determine if its security procedures for all of its Internet accounts are legally sufficient. Under these circumstances, the Bank cannot be

faulted for being proactive and not waiting for Tornow to file suit. Thus, I will not exercise this court's discretion to dismiss this action.

Accordingly, I must also determine whether to stay the case or transfer it to the Middle District of North Carolina, pursuant to 28 U.S.C.A. § 1404(a), which provides, "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The burden is on Tornow to show that transfer is proper. *See Alpharma, Inc. v. Purdue Pharma L.P.*, 634 F. Supp. 2d 626, 632 (W.D. Va. 2009). "Relevant factors include the plaintiff's choice of venue, convenience to the witnesses and parties, and the interests of justice." *Id.* "A plaintiff's choice of forum deserves substantial weight, except when (1) the plaintiff chooses a foreign forum, and (2) the chosen venue has little connection to the cause of action." *Id.* at 633 (internal quotation marks and citation omitted). Neither exception applies here. The Bank is headquartered in this district, and this district has many ties to this action. Many of the Bank's employees reside in or adjacent to this district. Also, the Bank's computer system, through which the fraudulent wire transfers were made, is located in this district.

For Tornow to satisfy its burden then, it must show that venue here is overwhelmingly inconvenient. *Id.* However, as counsel for Tornow conceded at oral argument, this courthouse sits only two and a half hours away from Winston-Salem, North Carolina, where all of the witnesses for Tornow purportedly reside. Therefore, I do not find it is overwhelmingly inconvenient for the parties to litigate their dispute in this court and will not transfer or stay the action.

For the foregoing reasons, it is **ORDERED** that the defendant's Motion to Dismiss or Stay (DE 2) and Motion to Transfer or Stay (DE 4) are DENIED.

ENTER: April 30, 2010

/s/ JAMES P. JONES
Chief United States District Judge